UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

YOUNG AMERICANS FOR FREEDOM,
YOUNG AMERICA'S FOUNDATION,
AVERY DURFEE, & BENJAMIN ROTHOVE,

          Plaintiffs,

  v.

U.S. DEPARTMENT OF EDUCATION &
MIGUEL CARDONA,

          Defendants.

## VERIFIED COMPLAINT

Plaintiffs Young Americans for Freedom (University of North Dakota Chapter) (YAF-UND), Young America's Foundation (YAF), Avery Durfee, and Benjamin Rothove allege their complaint against Defendants as follows:

### INTRODUCTION

1.    The Biden-Harris Administration runs a $60 million, nationwide scholarship and career-advancement program called the McNair Post-Baccalaureate Achievement Program. The program supports nearly 6,000 college students every year who want to pursue post-graduate studies. It offers a variety of benefits, including internships, seminars, tutoring, academic counseling, research opportunities, mentoring, and a stipend worth several thousand dollars.

2.    The McNair Program excludes many students because of their race. Defendants impose mandatory race-based eligibility requirements on the program.

3.      Defendants say these racial exclusions are necessary to racially balance the number of graduate students in America by giving a preference to so-called "underrepresented" students. But make no mistake: the word "underrepresented" is a euphemism for certain minority groups preferred by Defendants.

4.      Asians are excluded. Arabs and other Middle Eastern ethnicities are excluded, including both students from Israel and Gaza. Even many Latinos and some Africans are excluded. And, of course, whites are excluded. Unless they fit into a narrow exception for first-generation low-income students, only those students lucky enough to be on Defendants' list of favored racial groups get a chance to succeed with this program.

5.      The McNair Program's racial eligibility requirements are unconstitutional. By using "race as a factor in affording educational opportunities among its citizens," the McNair Program violates the Constitution's guarantee of equal protection. *Students for Fair Admissions, Inc. (SFFA) v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 204 (2023) (quoted source omitted).

6.      YAF-UND is a student organization on the campus of the University of North Dakota, which hosts Defendants' McNair Program that excludes certain students based on race, including one or more members of YAF-UND.

7.      YAF is a nationwide student organization with thousands of members across the country, including on campuses with McNair Programs funded by Defendants. Some YAF student members are ineligible for the McNair Program because of their race.

8.    This lawsuit is also brought on behalf of two individual students: Durfee, a white female currently attending the University of North Dakota, and Rothove, a white male currently attending the University of Wisconsin-Madison. Both students are ready and able to apply for the McNair Program, but ineligible because of their race.

9.    The McNair Program should be open to *all* students, regardless of race. Plaintiffs therefore seek a preliminary and permanent injunction, along with a declaratory judgment, prohibiting Defendants from imposing race-based eligibility criteria.

## PARTIES, JURISDICTION, & VENUE

10.    YAF-UND is a student organization on the campus of the University of North Dakota in Grand Forks, North Dakota, which is within this District. YAF-UND is an official campus chapter of YAF.

11.    YAF is a nationwide student organization with thousands of members on campuses across the country, including at the University of North Dakota. YAF's headquarters are in Reston, Virginia.

12.    Plaintiff Avery Durfee is a white female student and in her third year at the University of North Dakota. She is a member of YAF and the chapter Chairwoman of YAF-UND. She is interested in the McNair Program, wants to pursue graduate studies, has reviewed the program requirements, and contacted her school to inquire about its eligibility requirements. Durfee meets all the requirements for eligibility except one: she is not eligible to apply for the program because she is white.

A UND official responded to an email from Durfee explaining that the McNair Program has a racial exclusion for white students who are not first-generation and low-income students. Durfee is a resident of Big Timber, Montana, and a U.S. citizen. She has a cumulative GPA of over 3.0. Although she is a first-generation college student, Durfee does not meet the McNair low-income guidelines.

13.    Plaintiff Benjamin Rothove is a white male student attending the University of Wisconsin-Madison. He is a member of YAF. He is interested in the McNair Program, wants to pursue graduate studies, has reviewed the program requirements, and contacted his school to inquire about its eligibility requirements. Rothove meets all the requirements for eligibility except one: he is not eligible to apply for the program because he is white. Rothove emailed a UW-Madison official inquiring about whether his race would prohibit him from applying to McNair, and an official from UW-Madison responded that Rothove is ineligible because of his race. Rothove is a resident of Pleasant Prairie, Wisconsin and a U.S. citizen. He has a cumulative GPA over 2.8, has completed over 45 credits, and is able to participate in the program for a minimum of 12 full months to meet all mandatory aspects of the program. He is not a first-generation college student and does not meet the McNair federal income guidelines.

14.    Defendant United States Department of Education is a federal agency of the United States, responsible for implementing, regulating, and funding the McNair Program. The Department is headquartered in Washington, D.C. and operates within this District through various federal programs.

15.     Defendant Miguel Cardona is the Secretary of Education and is responsible for carrying out the McNair Program under 20 U.S.C. § 1070a-15 and 34 C.F.R. pt. 647. He is sued in his official capacity.

16.     This Court has jurisdiction over this complaint under 28 U.S.C. §§ 1331 and 2201, and 5 U.S.C. §§ 702 and 704, because this case presents a substantial question of federal law—specifically, whether the McNair Program violates the guarantees of equal protection under the United States Constitution and 5 U.S.C. § 706. This Court has authority to issue a declaratory judgment and to order injunctive relief and other relief that is necessary and proper pursuant to 28 U.S.C. §§ 2201, 2202, and 2412, and 5 U.S.C. §§ 702, 705, and 706.

17.     Venue is appropriate in this district under 28 U.S.C. § 1391(e)(1) because YAF-UND resides in this district, YAF has members within this district and operates within this district, Defendants operate and run programs within this District, and a substantial part of the events or omissions giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

### *The McNair Program*

18.     In 1987, Congress passed the Ronald E. McNair Post-Baccalaureate Achievement Program. *See* Higher Education Technical Amendments Act of 1987, § 6, Pub. L. 100-50, 101 Stat. 335 (codified as amended at 20 U.S.C. § 1070a-15) (renaming an existing post-baccalaureate achievement program passed by Congress in 1986).

19.     Defendants' purpose in running this program is to achieve a racial balance among students who obtain graduate degrees. In August 2022, Assistant Secretary Nasser Paydar said, "When we look at U.S. students studying to become our future physicians, professors, scientists and other crucial professionals requiring graduate degrees, many demographic groups are underrepresented . . . . McNair grants fund projects at universities and colleges that help underrepresented students to access doctoral programs."[1]

20.     Institutions of higher education compete for McNair grants every five years. During the 2023–24 academic year, Defendants funded McNair Program projects at 216 higher educational institutions at a cost of over $60 million. Nearly 6,000 students participated. The average grant was approximately $220,000 per year to provide services to a minimum of 24 students per year.[2]

21.     The McNair Program is ongoing for the 2024–25 academic year and will continue in the foreseeable future.

22.     There are no plans or proposals to terminate the McNair Program or to eliminate its race-based eligibility criteria.

23.     After receiving a grant from Defendants, institutions of higher education must offer a McNair Program with the following activities: opportunities

---

[1] https://www.ed.gov/news/press-releases/us-department-education-announces-517-million-189-mcnair-grants-improve-disadvantaged-students%E2%80%99-preparation-doctoral-study.

[2] Data regarding the McNair Program is publicly available at: https://www2.ed.gov/programs/triomcnair/awards.html.

for research or other scholarly activities; summer internships; seminars and other educational activities designed to prepare students for graduate studies; tutoring; academic counseling; and activities designed to assist students participating in the project in securing admission to and financial assistance for enrollment in graduate programs.[3]

24.    McNair Program projects may also provide the following additional activities: education or counseling services designed to improve financial and economic literacy of students; mentoring programs involving faculty members at institutions of higher education or students, or any combination of such persons; and exposure to cultural activities.[4]

25.    Defendants mandate that students participating in a McNair Program meet four eligibility criteria:

    a.    Citizen or national of the United States (or other lawful permanent status as outline in the regulations);

    b.    Currently enrolled in a degree program at an institution of higher education that receives federal funding;

    c.    Has not enrolled in a doctoral level study at any institution of higher education; and

    d.    One of the following:

        i.    Low-income first-generation college student, or

        ii.    a "member of a group that is underrepresented in graduate education."

---

[3] *See* U.S. Dep't of Ed., "Types of Projects," www2.ed.gov/programs/triomcnair/index.html.

[4] *Id*.

34 C.F.R. § 647.3 ("Who is eligible to participate in a McNair project?").

26.     The phrase "groups underrepresented in graduate education" is defined by Defendants as follows:

      a.      Black (non–Hispanic),

      b.      Hispanic,

      c.      American Indian,

      d.      Alaskan Native,

      e.      Native Hawaiians, and

      f.      Native American Pacific Islanders.

*See* 34 C.F.R. § 647.7(b).[5]

27.     Under the federal regulations, the following groups are ineligible for McNair Program benefits (unless they otherwise qualify as "low-income first-generation college student"):

      A. Asian (including all Asian countries, from the Middle East to far-east Asia),

      B. white (Caucasian),

      C. Jewish (including ethnic groups such as Mizrahi, Ashkenazi, and Sephardic, and religious sects such as Hasidic[6]),

---

5 Under 34 C.F.R. § 647.3(c)(3), the Secretary may designate other "underrepresented" groups if documented with statistical evidence or other data, although Plaintiffs are unaware of any such designation ever made by Defendants.

6 In another federal program, the federal government designated Hasidic Jews as eligible for "minority" benefits because they were "disadvantaged" under federal law. 15 C.F.R. § 1400.1(c); *see also* 15 C.F.R. § 1400.4 (requiring evidence of racial, ethnic, or cultural bias to establish "disadvantage").

    D.  non-Hispanic Latino (such as individuals from Brazil and other non-Hispanic Caribbean, South and Central American countries), and

    E.  non-Black individuals from Africa (such as Egyptian or other Arab groups).

28.    Furthermore, when Defendants consider which institutions to fund for a McNair Program, Defendants stress that institutions must "demonstrate[ ] that the project's target population is underrepresented in graduate education, doctorate degrees conferred and careers where a doctorate is a prerequisite."[7]

29.    Like all McNair Programs nationwide, the McNair Program is managed day-to-day by local campus officials. But those local officials must comply with all federal regulations and the terms of their McNair grant from Defendants. The racial eligibility requirements imposed at UND and UW-Madison for the McNair Program, for example, are not requirements from campus officials or the States of North Dakota or Wisconsin. The racial eligibility requirements derive solely from federal law and the acts and authority of Defendants. No independent state law or policy authorizes these racial eligibility requirements. Therefore, the harm caused to Plaintiffs as described in this lawsuit derives from Defendants and their actions, not any other third party or any other state official.

**The McNair Program at the University of North Dakota**

30.    Defendants fund and regulate the McNair Program at the University of North Dakota (UND), where YAF has members and a chapter, YAF-UND.

---

[7] *Id.*

31.     In the 2023–24 academic year, UND had 28 participants. UND will offer a McNair Program during the 2024–25 academic year.

32.     UND's website explains that its McNair Program offers many services and opportunities. The following is a screenshot from the UND-McNair website[8]:



33.     On its social media accounts, UND explains that the McNair Program is for any student interested in pursuing graduate education. Below is a screenshot posted on UND's Facebook Page for its McNair Program:

---

[8] https://und.edu/student-life/trio/mcnair-program/index.html#:~:text=Have%20a%20minimum%20of%203.00,Planning%20to%20complete%20a%20Ph.






34.    UND actively recruits students to apply for the McNair Program. In its Fall 2023 edition of the McNair Newsletter, UND wrote, "We are RECRUITING!" Below is a screenshot from that newsletter:

**RECRUITING**

We are RECRUITING! We are looking for any & all promising undergraduate students as potential new scholars. Tell your friends, your classmates, your roomates, and the people you sit next to in the dining hall. You know the benefits of this program first-hand, so shout them far and wide!

35.    UND also explains that McNair Program students can explore a wide variety of undergraduate research. In the newsletter, UND wrote that "undergraduate research offers scholars a unique opportunity to immerse themselves in their field of study, acquire skills that extend beyond the classroom, and contribute meaningfully to their academic community and the broader world." The McNair

Program at UND supports many categories of student research interests, including the following: language processing and acquisition, autism, augmentative alternative communications, indigenous justice, mathematics, counseling youth, mindfulness, and mentorship.

36.     UND's McNair website also confirms that for students to apply, they must either be first generation, low-income college students, or "from a group underrepresented in doctoral studies." The website does not list specific racial groups, however.

37.     UND also adds additional criteria beyond the federal race-based criteria. At UND, a McNair Program applicant must have completed their sophomore year, have a minimum of a 3.0 GPA, and other subjective criteria (such as "good writing skills," "intellectually curious," and "planning to complete a Ph.D.").

38.     Students who do not meet the requirements for the McNair Program at UND may participate in the Pre-McNair Academy. This program, which is part of the McNair Program, has an identical racial exclusion. It is only open to certain races when the students are not first-generation and income qualified. Pre-McNair Academy students get access to tutoring, GRE preparation, academic advising, and the ability to participate in monthly McNair Seminars.[9]

39.     YAF-UND has one or more members who are ready and able to apply to the McNair Program, but who are ineligible because of their race.

---

[9] For purposes of this verified complaint, references to the McNair Program offered at UND include the Pre-McNair Academy, which is a part of the McNair Program.

40.     On July 23, 2024, Durfee emailed UND's McNair staff to request

information. She inquired as follows:

> My name is Avery Durfee and I am a third-year student at UND
> and I am very interested in the McNair program for graduate
> school. I saw on the UND website that you were the one I was to
> connect with to inquire more about the program. Could you email
> me an application or something to see more about it?

41.     A UND Staff Member, Kelly Kennedy wrote back as follows:

> Hello Avery, thanks for reaching out & it's wonderful to hear you're
> considering graduate school! TRIO Programs, including McNair,
> serve first-generation (neither parent has a bachelor's degree),
> income-eligible students (typically, students who receive a full Pell
> grant). For McNair specifically, to be eligible for services students
> must either be **both** first-generation & income eligible **or** meet
> underrepresented status (The following ethnic and racial groups
> are considered underrepresented in graduate education: Black
> (non-Hispanic), Hispanic, American Indian, Alaskan Native (as
> defined in section 7306 of the Elementary and Secondary
> Education Act of 1965, as amended (ESEA)), Native Hawaiians (as
> defined in section 7207 of the ESEA), and Native American Pacific
> Islanders (as defined in section 320 of the HEA). If you think you're
> eligible for the program under those definitions, let me know and I
> will send you the application materials!

42.     Given that Durfee, as a white student, was ineligible because of her

race, Kennedy then offered a separate, but equal, accommodation:

> If you are not eligible for McNair, I am also the coordinator for the
> Council for Graduate Studies National Name Exchange list at
> UND which is a program designed to match eligible students to
> graduate schools, typically in funded programs. Eligibility for
> NNE can just be 'rural' so you can definitely sign up for that -
> https://cgsnet.org/data-insights/diversity-equity-
> inclusiveness/national-name-exchange/national-name-exchange-
> for-students **Today, July 24, is the last day for this year's
> list!** Students do need to sign up annually & since you are going
> into senior year, I can definitely notify you when the 2025 list
> opens up as well. Please let me know if you need McNair
> application materials or if I can help you with NNE!

43.     Durfee is ready and able to apply for the McNair Program (and its Pre-McNair Academy subcomponent), but given that Durfee is white, and not a low-income college student, she did not apply for the McNair Program. She will not apply so long as that racial requirement remains in effect.

44.     Durfee considers the racial eligibility requirement a harm to her personal dignity.

45.     Durfee is also harmed because Defendants' racial eligibility requirement harms her ability to apply on equal footing for the McNair Program and obtain all its direct and indirect benefits.

**The McNair Program at UW-Madison**

46.     Defendants fund and regulate the McNair Program at the University of Wisconsin-Madison, where Rothove attends and where YAF maintains an active chapter.

47.     In the 2023–24 academic year, UW-Madison had 28 participants and anticipates another 28 participants for the 2024–25 academic year.

48.     Rothove is majoring in political science and economics. He has interests in writing, journalism, politics, public policy, and philosophy. His work has been published by the Wall Street Journal, the National Review, and the Washington Examiner.

49.     Rothove has a strong desire and aptitude for graduate school and is therefore able and ready to apply for the McNair Program.

14

50.     Consistent with Defendants' regulations, UW-Madison advertises that its McNair Program "supports eligible undergraduates in acquiring the knowledge, skills and capacities they need to successfully navigate Ph.D. studies."[10]

51.     On its website, UW-Madison invites certain students to "apply to McNair" with the following message: "Undergraduate students at UW–Madison with underrepresented, first-generation and low-income status who meet the program's eligibility requirements and want to pursue postdoctoral education may apply to join the McNair Scholars Program. Applications open in late summer and close in October on the Wisconsin Scholarship Hub (WiSH)."

52.     UW-Madison advertises the following benefits for those accepted into the McNair Program:

- Conduct research under the mentorship of UW–Madison faculty and researchers
- Learn research ethics and responsible conduct of research
- Develop and present research at local and national conferences
- Network with graduate students, post-doctoral trainees and faculty with similar research interest
- Learn how to prepare a competitive graduate applications
- Receive advice on locating funding for graduate studies and financing graduate education
- Attend professional development workshops/seminars/discussions on how to successfully navigate the rigors of graduate education
- Participate in study groups and study jams with McNair peers
- Visit graduate programs in the USA (up to two cities)
- Receive up to a ~$5,000 research stipend

---

10 UW-Madison's McNair Program page is here: https://mcnair.wisc.edu/.

- And much, much more…

53.    As for eligibility, UW-Madison's criteria mirror the federal requirements[11]:

> To be eligible, a student must meet either criterion (1) OR (2). All students must meet criterion (3) (4) and (5):
>
> 1. First-generation college student as well as low income students. (TRIO Income Levels;  34B C.F.R. §647.7, 2023)
>
> 2. African American, Hispanic/Latino, American Indian (according to federal guidelines, Asian Americans, including Southeast Asian Americans are eligible under criterion 1); 34B C.F.R. §647.7, 2023)
>
> 3. A minimum cumulative Grade Point Average of 2.8 and completed 45 credits.
>
> 4. US citizen or permanent resident.
>
> 5. Able to participate in the program for a minimum of 12 full months (including a full summer) in order to meet all the mandatory aspects of the program.

54.    Regarding Asian students (who Defendants do *not* consider "underrepresented"), UW-Madison clarifies that to be eligible, "you must meet either criterion #1 OR criterion #2 (you do not need to meet both criteria to be eligible). Asian-American students are eligible if they meet criterion 1, that is, first-generation college student as well as low-income student."

55.    The language UW-Madison uses in criterion 2, with regards to Asians, is surplusage because Asians are required to meet criterion 1.

---

11 https://mcnair.wisc.edu/become-a-mcnair-scholar/.

56.     To encourage students to apply, UW-Madison advertises its McNair alumni, several of whom have academic interests like Rothove. Below are screenshots from individuals advertised by UW-Madison as representative of McNair Program scholars:



57.     UW-Madison states on its website: "Please email mcnair@cdo.wisc.edu if you have any questions about your eligibility."

58.     On July 25, 2024, Rothove sent an email to this address as follows: "Hello, I was curious if I am eligible for the McNair Scholars Program if I am

not African American, Hispanic/Latino, or American Indian. I do not come from a low-income family, and I am not a first-generation college student either. Thank you, Ben Rothove."

59.     On August 20, 2024, the Director of UW-Madison's McNair Program, Audra K. Hernandez, emailed Rothove stating that he is not eligible because of his race. The mail stated as follows: "As a federally funded program, we must adhere to the eligibility requirements set by the U.S. Department of Education (below). Therefore, you would not be eligible for the program if you are neither a member of one of the listed underrepresented groups nor a first-generation and low-income background student." The email concluded with a list of the federal eligibility requirements, including the racial categories defining "underrepresented groups."

60.     Applications for the McNair Program open at UW-Madison in mid-August 2024. The application period closes on or about October 1, 2024, and the anticipated decision date is on or about November 1, 2024.

61.     Rothove has not and will not apply to the McNair Program so long as the racial eligibility requirement remains.

62.     Rothove considers the racial eligibility requirement a harm to his personal dignity.

63.     Rothove is also harmed because Defendants' racial eligibility requirement harms his ability to apply on equal footing for the McNair Program and obtain all its direct and indirect benefits.

## COUNT 1
## EQUAL PROTECTION VIOLATION

64.     Plaintiffs re-allege and incorporate by reference the allegations set forth above as if fully set forth herein.

65.     The Constitution forbids "discrimination by the general government . . . against any citizen because of his race." *Gibson v. Mississippi*, 162 U.S. 565, 591 (1896).

66.     "The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws." *United States v. Windsor*, 570 U.S. 744, 774 (2013).

67.     "[A]ll racial classifications [imposed by the government] must be analyzed by a reviewing court under strict scrutiny." *Johnson v. California*, 543 U.S. 499, 505 (2005) (quoted source omitted). "Under strict scrutiny, the government has the burden of proving that racial classifications 'are narrowly tailored measures that further compelling governmental interests.' " *Id*. (quoted source omitted).

68.     To establish a compelling government interest, Defendants must provide evidence that the purpose of the program is "remediating specific, identified instances of past discrimination that violated the Constitution or a statute." *SFFA*, 600 U.S. at 207.

69.     Defendants have never claimed that the McNair Program's purpose is to remediate past discrimination that violated the Constitution or a statute.

70.     Defendants have no evidence that the McNair program supports a compelling government interest.

71.     To prove that a program is narrowly tailored, Defendants must meet multiple factors. For example, Defendants must prove that the racial categories used in their program are not overinclusive or underinclusive. *Id.* at 216. Defendants must satisfy other criteria also, such as whether the program has a "logical end point." *Id.* at 221 (quoted source omitted). Finally, Defendants must also meet the other narrow-tailoring factors in *United States v. Paradise*, 480 U.S. 149, 171 (1987).

72.     Defendants cannot proffer any evidence that the McNair Program is narrowly tailored.

73.     Race-conscious programs must also meet an additional test. According to the U.S. Supreme Court, race-based programs must "comply with the twin commands of the Equal Protection Clause that race may never be used as a 'negative' and that it may not operate as a stereotype." *SFFA*, 600 U.S. at 218.

74.     Defendants cannot proffer any evidence that the McNair Program meets the Constitution's "twin commands." Race is used as a "negative" because students like Rothove are not considered on equal footing with students of other races. Like college admissions, government resources and financial aid are finite. *See generally Nuziard v. Minority Bus. Dev. Agency*, __ F. Supp. 3d __, 2024 WL 965299, at *36 (N.D. Tex. Mar. 5, 2024) ("Absent a theoretical program with boundless coffers, most federal benefits are 'zero sum' to a degree. . . . MBDA Business Centers have finite resources and offer finite services. A Black man or a Hawaiian woman automatically

gets in the door; a Romanian man or a Libyan woman does not."). "A benefit provided to some applicants but not to others necessarily advantages the former group at the expense of the latter." *SFFA*, 600 U.S. at 218–19. And race is used as a "stereotype" because Defendants assert that all individual students within their preferred racial categories are similarly "underrepresented" and need help.

75.     Rothove is able and ready to apply for the McNair Program but is ineligible because of his race.

76.     Durfee is able and ready to apply for the McNair Program but is ineligible because of her race.

77.     YAF has members who are able and ready to apply for the McNair Program but are ineligible because of their race.

78.     YAF-UND has members who are able and ready to apply for the McNair Program but are ineligible because of their race.

79.     The racial classifications of the McNair Program, specifically those mentioned in 20 U.S.C. § 1070a-15 and 34 C.F.R. pt. 647, are unconstitutional because they violate the equal protection guarantee in the United States Constitution.

## COUNT 2
## ADMINISTRATIVE PROCEDURE ACT VIOLATION

80.     Plaintiffs re-allege and incorporate the allegations set forth above as if fully set forth herein.

81.    Under the Administrative Procedure Act (APA), courts shall "hold unlawful and set aside agency action, findings, and conclusions found to be—contrary to [a] constitutional right." 5 U.S.C. § 706(2)(B).

82.    The McNair Program regulations, specifically those found at 34 C.F.R. §§ 647.3 & 647.7, impose unconstitutional racial classifications.

83.    Defendants take agency action to implement and enforce these regulatory racial classifications in violation of equal protection guarantee under the Fifth Amendment's Due Process Clause.

84.    Therefore, the Court should vacate and set aside these regulations as unconstitutional.

## RELIEF REQUESTED

Plaintiffs respectfully request that this Court:

A.    Enter a preliminary injunction enjoining Defendants from enforcing all unconstitutional and illegal race-based qualifications in the McNair Program;

B.    Enter a preliminary injunction ordering Defendants to notify all McNair Program institutions, including UND and UW-Madison, that the race-based qualifications are no longer in effect;

C.    Enter a declaratory judgment that the race-based qualifications in the McNair Program are unconstitutional and otherwise violate the APA;

D.    Enter an order permanently enjoining Defendants from applying and enforcing race-based qualifications in the McNair Program;

22

E.      Vacate and set aside the racial qualifications in 34 C.F.R. pt. 647, specifically the race-based eligibility qualifications in 34 C.F.R. § 647.3 and the definitions in 34 C.F.R. § 647.7;

F.      Award Plaintiffs their attorney fees under 28 U.S.C. § 2412 or other relevant laws.

G.      Grant Plaintiffs such other and further relief as the court deems appropriate.


Dated: August 27, 2024

                                WISCONSIN INSTITUTE FOR LAW & LIBERTY, INC.

                                */s/ Daniel P. Lennington*
                                Richard M. Esenberg
                                Daniel P. Lennington
                                Skylar R. Croy
                                330 East Kilbourn Avenue, Suite 725
                                Milwaukee, WI 53202
                                Telephone: (414) 727-9455
                                Fax: (414) 727-6385
                                Rick@will-law.org
                                Dan@will-law.org
                                Skylar@will-law.org

                                *Attorneys for Plaintiffs*

## VERIFICATION OF VICTOR E. BERNSON, JR.

1.      I am Vice President and General Counsel of the Young America's Foundation (YAF). YAF is a plaintiff in this lawsuit.

2.      I have personal knowledge of YAF, its operations, activities, and intentions, which are set forth in the foregoing Verified Complaint. If called upon to testify, I would competently testify as to the matters relevant to YAF's claims.

3.      I verify under the penalty of perjury under the laws of the United States that the factual statements in this Verified Complaint concerning YAF are true and correct.

Dated:                                                                          8/14/24

Signature _____

## VERIFICATION OF AVERY DURFEE

1.    I am a plaintiff in this lawsuit.

2.    I am the Chairwoman of the University of North Dakota Chapter of Young Americans for Freedom, which is an official chapter of the Young America's Foundation.

3.    I have personal knowledge as to the allegations relevant to me and YAF-UND in the above complaint. If called upon to testify, I would competently testify as to the matters relevant to me and YAF-UND.

4.    I verify under the penalty of perjury under the laws of the United States that the factual statements in this Verified Complaint related to me are true and correct.

Dated: ____August 9, 2024_____

Signature_____

## VERIFICATION OF BENJAMIN ROTHOVE

1.      I am a plaintiff in this lawsuit.

2.      I have personal knowledge as to the allegations relevant to me in the above complaint. If called upon to testify, I would competently testify as to the matters relevant to me.

3.      I verify under the penalty of perjury under the laws of the United States that the factual statements in this Verified Complaint related to me are true and correct.

Dated: __8/26/2024_____          Signature_____