**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

YOUNG AMERICANS FOR FREEDOM, *et al.*,

      *Plaintiffs*,

v.

U.S. DEPARTMENT OF
EDUCATION, *et al.*,

      *Defendants.*

Case No. 3:24-cv-00163-ARS

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR**
**<u>PRELIMINARY INJUNCTION</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................... 1

BACKGROUND ...................................................................................................... 3

STANDARD OF REVIEW ....................................................................................... 6

ARGUMENT ............................................................................................................ 7

    I.   Plaintiffs Are Not Likely to Succeed on the Merits Because They Lack Standing .. 7

        A.   Plaintiffs' Asserted Injuries Would Not Be Redressed by Their Requested Relief Because They Are Not Eligible for the McNair Program Even if the Challenged Eligibility Provisions Were Eliminated ............................................ 7

        B.   The Organizational Plaintiffs Lack Standing ......................................... 12

    II.   Plaintiffs Do Not Face a Threat of Irreparable Harm. ................................. 13

    III.  The Public Interest Weighs Against a Preliminary Injunction ................................. 15

    IV. Because Plaintiffs Have Not Established Standing or Any Imminent Irreparable Harm, the Court Should Not Reach the Question of Whether the Challenged Provisions Are Constitutional ................................................................. 16

    V.   Any Relief Should Be Limited to the Plaintiffs. ......................................... 17

CONCLUSION ........................................................................................................ 20

## **TABLE OF AUTHORITIES**

**CASES**

*Abbott Lab'ys v. Gardner,*
387 U.S. 136 (1967) .......................................................................................... 19

*Adarand Constructors, Inc. v. Pena,*
515 U.S. 200 (1995) .......................................................................................... 11

*Allen v. Wright,*
468 U.S. 737 (1984) .......................................................................................... 12

*Arizona v. Biden,*
40 F.4th 375 (6th Cir. 2022) ............................................................................. 17

*Benisek v. Lamone,*
585 U.S. 155 (2018) .......................................................................................... 14

*California v. Azar,*
911 F.3d 558 (9th Cir. 2018) ............................................................................ 19

*California v. Texas,*
593 U.S. 659 (2021) ............................................................................... 8, 9, 10

*Champlin Refining Co. v. Corp. Comm'n of Okla.,*
286 U.S. 210 (1932) .......................................................................................... 10

*Cornish v. Dudas,*
540 F. Supp. 2d 61 (D.D.C. 2008) ................................................................... 15

*Dep't of Homeland Sec. v. New York,*
140 S. Ct. 599 (2020) ................................................................................ 17, 18

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Com.,*
928 F.3d 95 (D.C. Cir. 2019) ........................................................................... 12

*Ferry-Morse Seed Co. v. Food Corn, Inc.,*
729 F.2d 589 (8th Cir. 1984) ...................................................................... 6, 16

*Food & Drug Admin. v. All. for Hippocratic Med.,*
    602 U.S. 367 (2024)........................................................................................ 12

*Gen. Motors Corp. v. Harry Brown's, LLC,*
    563 F.3d 312 (8th Cir. 2009).......................................................................... 14

*Gill v. Whitford,*
    585 U.S. 48 (2018)................................................................................... 17, 19

*Haaland v. Brackeen,*
    599 U.S. 255 (2023)........................................................................ 7, 8, 9, 10

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982)........................................................................................ 12

*Heckler v. Matthews,*
    465 U.S. 728 (1984)................................................................................... 11, 12

*Hochendoner v. Genzyme Corp.,*
    823 F.3d 724 (1st Cir. 2016)............................................................................. 7

*Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.,*
    182 F.3d 598 (8th Cir. 1999).......................................................................... 14

*Hunt v. Wash. State Apple Advert. Comm'n,*
    432 U.S. 333 (1977)........................................................................................ 13

*K Mart Corp. v. Cartier, Inc.,*
    486 U.S. 281 (1988)........................................................................................ 10

*Los Angeles v. Lyons,*
    461 U.S. 95 (1983)............................................................................................ 9

*Louisiana v. Becerra,*
    20 F.4th 260 (5th Cir. 2021).......................................................................... 18

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992)........................................................................................... 7

*Lyng v. Nw. Indian Cemetery Protective Ass'n,*
    485 U.S. 439 (1988)................................................................................... 2, 17

*Madsen v. Women's Health Ctr., Inc.*,
    512 U.S. 753 (1994) ............................................................................................. 17

*Maryland v. King*,
    567 U.S. 1301 (2012) .......................................................................................... 15

*Matal v. Tam*,
    582 U.S. 218 (2017) ............................................................................................. 16

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997) ............................................................................................. 14

*MC/DC/DE Broads. Ass'n v. FCC*,
    236 F.3d 13 (D.C. Cir. 2001) .............................................................................. 10

*Minnesota v. Mille Lacs Band of Chippewa Indians*,
    526 U.S. 172 (1999) ............................................................................................. 10

*Miss. Univ. for Women v. Hogan*,
    458 U.S. 718 (1982) ............................................................................................. 11

*Missouri v. Yellen*,
    538 F. Supp. 3d 906 (E.D. Mo. 2021),
    *aff'd*, 39 F.4th 1063 (8th Cir. 2022) .................................................................... 7

*Moore v. U.S. Dep't of Agric. ex rel. Farmers Home Admin.*,
    993 F.2d 1222 (5th Cir. 1993) ............................................................................ 11

*Munaf v. Geren*,
    553 U.S. 674 (2008) ............................................................................................... 7

*Murthy v. Missouri*,
    144 S. Ct. 1972 (2024) .......................................................................................... 7

*Ne. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*,
    508 U.S. 656 (1993) ....................................................................................... 10, 11

*Nken v. Holder*,
    556 U.S. 418 (2009) ............................................................................................... 6

*Noem v. Haaland*,
    41 F.4th 1013 (8th Cir. 2022) .............................................................................. 9

*Paraquad, Inc. v. St. Louis Hous. Auth.*,
    259 F.3d 956 (8th Cir. 2001) ................................................. 14

*Planned Parenthood Minn., N.D., S.D. v. Rounds*,
    530 F.3d 724 (8th Cir. 2008) ................................................. 13

*Religious Sisters of Mercy v. Becerra*,
    55 F.4th 583 (8th Cir. 2022) ................................................. 13

*Seaside Civic League, Inc. v. U.S. Dep't of Hous. & Urb. Dev.*,
    No. 141823RMW, 2014 WL 2192052 (N.D. Cal. May 23, 2014) ...................... 15

*Sessler v. City of Davenport*,
    990 F.3d 1150 (8th Cir. 2021) ................................................. 6

*St. Marie v. Ludeman*,
    No. 09-CV-3141-JNE-AJB, 2010 WL 924420 (D. Minn. Mar. 11, 2010) .......... 14

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ................................................. 9

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    600 U.S. 181 (2023) ................................................. 13

*Trump v. Hawaii*,
    585 U.S. 667 (2018) ................................................. 18, 19

*Turtle Island Foods, SPC v. Thompson*,
    992 F.3d 694 (8th Cir. 2021) ................................................. 6

*United States v. Arkansas*,
    No. 4:09-CV-33-JLH, 2010 WL 1408818 (E.D. Ark. Apr. 7, 2010) .................... 15

*United States v. Texas*,
    599 U.S. 670 (2023) ................................................. 19

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
    454 U.S. 464 (1982) ................................................. 12, 17

*Walters v. Nat'l Ass'n of Radiation Survivors*,
    468 U.S. 1323 (1984) ................................................. 15

*Weinberger v. Romero-Barcelo,*
　456 U.S. 305 (1982) ................................................................................................ 19

*Winter v. Nat. Res. Def. Council, Inc.,*
　555 U.S. 7 (2008) ........................................................................................... 6, 7, 13


Statutes

5 U.S.C. § 706(2) ................................................................................................... 19

5 U.S.C. § 706(2)(B) ........................................................................................ 18, 19

20 U.S.C. § 1070a-11(h)(4) ..................................................................................... 4

20 U.S.C. § 1070a-15(a) ............................................................................. 3, 10, 15

20 U.S.C. § 1070b-15(b) ........................................................................................... 3

20 U.S.C. § 1070a-15(c) ........................................................................................... 3

20 U.S.C. § 1070a-15(d) ................................................................................... 4, 8, 9

20 U.S.C. § 1070a-15(d)(1) .................................................................................... 10

20 U.S.C. § 1070a-15(d)(2) .................................................................................... 12

20 U.S.C. § 1070a-15(f) ........................................................................................... 3

An Act to Reauthorize and Revise the Higher Education Act of 1965,
　Pub. L. No. 99498, 100 Stat. 1268 (1986) ............................................................. 3

Higher Education Amendments of 1992,
　Pub. L. No. 102325, 106 Stat. 448 ......................................................................... 3

Higher Education Opportunity Act,
　Pub. L. No. 110-315, 122 Stat. 3078 (2008) ......................................................... 4


RULES

Fed. R. Civ. P. 12 ..................................................................................................... 7

Regulations

34 C.F.R. § 77.1(c) ........................................................................................ 3

34 C.F.R. § 647.3 ........................................................................................... 8

34 C.F.R. § 647.3(a) ...................................................................................... 5

34 C.F.R. § 647.3(b) ...................................................................................... 5

34 C.F.R. § 647.3(c) ................................................................................... 4, 5

34 C.F.R. § 647.3(c)(1) ............................................................................... 8, 9

34 C.F.R. § 647.3(c)(2) ............................................................................... 4, 9

34 C.F.R. § 647.3(c)(3) ........................................................................... 5, 8, 9

34 C.F.R. § 647.3(d) ...................................................................................... 5

34 C.F.R. § 647.5 ........................................................................................... 3

34 C.F.R. § 647.7 ....................................................................................... 4, 5

34 C.F.R. § 647.7(a) ...................................................................................... 3

34 C.F.R. § 647.7(b) ................................................................................. 4, 5, 9

High School Equivalency Program and College Assistance Migrant Program, the
   Federal TRIO Programs, and Gaining Early Awareness and Readiness for
   Undergraduate Program,
   75 Fed. Reg. 65,712 (2010) ....................................................................... 5

Ronald E. McNairPostbaccalaureate Achievement Program,
   59 Fed. Reg. 43,986 (1994) ....................................................................... 4

## INTRODUCTION

This case seeks to enjoin one of several eligibility criteria that may be considered when colleges select applicants for participation in the Ronald E. McNair Post-Baccalaureate Achievement Program (hereinafter "McNair Program"). The McNair Program provides federal grant funding for various educational opportunities to prepare selected participants for doctoral studies through involvement in research and other scholarly activities. The Department of Education provides five-year grants to colleges, which in turn administer the application and admissions process and provide services to student participants. The decades-old McNair Program has awarded millions in federal funding to expand equitable access to higher education and has supported projects designed to help thousands of underrepresented students interested in pursuing doctoral programs. By statute, at least two-thirds of students participating in the McNair Program at each school must be low-income, first-generation college students. If a school also accepts participants that are not low-income, first-generation college students, those other participants must be part of a group that is underrepresented in graduate education, which by regulation can include—but need not be limited to—certain racial minorities.

Plaintiffs bring an Equal Protection challenge to the presumption that certain racial groups are underrepresented in graduate education for the McNair Program's student-participant eligibility, and they seek a nationwide preliminary injunction of those provisions only. The challenged presumption is fully consistent with the Equal Protection component of the Fifth Amendment. But this Court should not reach the merits of Plaintiffs' Equal Protection claim because Plaintiffs are not likely to succeed on the merits of their challenge for a more fundamental reason: they lack standing. None of the

Plaintiffs or their members who claim to be interested in the McNair Program are eligible as low-income, first-generation college students or claim to be eligible as a member of another group that is underrepresented in graduate education (based on race or otherwise). So even if the Court were to grant the relief Plaintiffs request—enjoining the presumption that certain racial groups are underrepresented in graduate education—Plaintiffs and their members have not shown that they could apply under the other eligibility criteria, and their alleged injuries are therefore not redressable through this lawsuit. Under these circumstances, the Court should not reach the merits of Plaintiffs' constitutional claims and especially not in the posture of a preliminary injunction motion without the benefit of a full record. *See generally Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.").

Plaintiffs also fail to establish the remaining requirements for a preliminary injunction. They are not at risk of any irreparable harm because, as just mentioned, they have not shown that they would be eligible to apply for the McNair Program even if this Court were to strike the challenged provisions. Moreover, their delay in filing an emergency motion challenging a decades-old program shows a lack of irreparable harm. And a court order declaring an act of Congress and/or its implementing regulations unconstitutional would contravene the public interest and potentially deny scholarly opportunities to currently eligible students.

Plaintiffs' motion for a preliminary injunction should accordingly be denied. To the extent the Court finds that a preliminary injunction is warranted, such relief should be limited to the Plaintiffs and not issued on a nationwide basis, and it should target only

the challenged eligibility provisions while otherwise allowing the program to continue to support eligible students in their pursuit of graduate education.

## BACKGROUND

Congress first authorized the McNair Program as part of the 1986 amendments to the Higher Education Act of 1965. *See* An Act to Reauthorize and Revise the Higher Education Act of 1965, Pub. L. No. 99498, § 417D(d), 100 Stat. 1268 (1986); *see also* Higher Education Amendments of 1992, Pub. L. No. 102325, § 402E, 106 Stat. 448 (renaming the program to commemorate the late astronaut Ronald E. McNair, Ph.D.). The program's purpose is to "provide disadvantaged college students with effective preparation for doctoral study." 20 U.S.C. § 1070a-15(a). It does so by providing participating students with research opportunities, internships, seminars, tutoring, counseling, and other support services. *Id.* § 1070a-15(b). Schools may also opt to provide participants with mentoring, counseling in financial planning, exposure to cultural events, and/or a stipend not to exceed $2,800 annually per student plus the cost of summer tuition, summer room and board, and summer transportation. *Id.* § 1070a-15(c), (f).

Institutions of higher education or combinations thereof apply for a five-year grant from the Department of Education, and, if awarded funding, the grantees administer the program ("project") themselves as they see fit within the confines of the statute and regulations, including reviewing applications from interested students, making selection decisions, and providing services to student participants. *See* 34 C.F.R. §§ 77.1(c), 647.5, 647.7(a); *see also* Declaration of ReShone Moore ("Moore Decl.") ¶¶ 4–5. In addition to confirming that the students seeking to participate meet the statutory and regulatory eligibility criteria, schools may choose to use various selection criteria in order to decide who to accept, such as GPA and application essays. Moore Decl. ¶¶ 8, 12. The McNair

3

Program provides a total of around $56 million annually to schools with approximately 5,800 total student participants. *See Id.* ¶¶ 6–7.

By statute, any grantee that receives funds through the McNair Program must provide the Department of Education with (1) "an assurance that not less than two-thirds of the individuals participating in the project proposed to be carried out under any application be low-income individuals who are first generation college students"; and (2) "an assurance that the remaining persons participating in the project proposed to be carried out be from a group that is underrepresented in graduate education, including . . . Alaska Natives . . . Native Hawaiians . . . [and] Native American Pacific Islanders." 20 U.S.C. § 1070a-15(d).[1]

Department of Education regulations first issued in 1994 further refine these criteria. *See* Ronald E. McNair Postbaccalaureate Achievement Program, 59 Fed. Reg. 43,986, 43,990 (1994). By regulation, eligible students must be either:

(1)  A low-income[2] individual who is a first-generation college student; [or]

(2)  A member of a group that is underrepresented in graduate education [that is listed in 34 C.F.R. § 647.7]; or

(3)  A member of a group that is not listed in § 647.7 if the group is underrepresented in certain academic disciplines as documented by standard statistical references or other national survey data submitted to and accepted by the Secretary on a case-by-case basis.

34 C.F.R. § 647.3(c) (footnote added). The term "[g]roup[] underrepresented in graduate education," as used in § 647.3(c)(2), is defined as "Black (non-Hispanic), Hispanic,

---

[1] The statutory language that Alaska Natives, Native Hawaiians, Native American Pacific Islanders must be treated as groups underrepresented in graduate education was added by Congress in 2008. *See* Higher Education Opportunity Act, Pub. L. No. 110-315, § 403(e)(4)(B), 122 Stat. 3078 (2008).

[2] Low-income here means the individual's family income did not exceed 150% of the poverty line. 34 C.F.R. § 647.7(b); *accord* 20 U.S.C. § 1070a-11(h)(4).

American Indian, Alaskan Native . . . , Native Hawaiians . . . , and Native American Pacific Islanders." *Id.* § 647.7(b).[3] Schools are not required to accept students from the second and third eligibility categories set forth in § 647.3(c), and a school can, for example, comply with the requirements of the program by only considering or only accepting eligible low-income, first-generation college students.[4] *See* Moore Decl. ¶ 15 (noting, for example, that the McNair Program at Troy University and North Carolina A&M served 100% low-income, first-generation college students).

If a school chooses to receive applications for case-by-case eligibility under § 647.3(c)(3), the school must send any such application for eligibility to the Department for approval. *Id.* ¶ 13. The Department of Education has and continues to approve student applicants on a case-by-case basis under § 647.3(c)(3) on the basis of data associated with their membership in an underrepresented group, including both membership in racial groups and in non-race-based groups (*e.g.*, Females in Physics, Asian Males in Cybersecurity, Transgender Asian Females in Chemistry, and Muslim Females in Neuroscience, etc.) that it determines are underrepresented in a particular academic discipline at that time. *Id.* ¶ 14.

There are four Plaintiffs in this lawsuit: (1) Young Americans for Freedom, a nationwide student group based in Virginia ("YAF"); (2) the University of North Dakota ("UND") chapter of YAF; (3) Avery Durfee, a white Montana resident and undergraduate

---

[3] *See also* High School Equivalency Program and College Assistance Migrant Program, the Federal TRIO Programs, and Gaining Early Awareness and Readiness for Undergraduate Program, 75 Fed. Reg. 65,712, 65,795 (2010) (adding Alaska Natives, Native Hawaiians, and Native American Pacific Islanders to conform with the Higher Education Opportunity Act of 2008, *see supra* note 1).

[4] In addition to meeting one of these three eligibility criteria, applicants must also meet certain other criteria that are not at issue here; they must be a U.S. citizen or hold certain eligible non-citizen statuses, be enrolled in a participating institution of higher education, and not enrolled in doctoral level study. *See* 34 C.F.R. § 647.3(a)–(b), (d).

student at UND who is not low-income; and (4) Benjamin Rothove, a white Wisconsin resident and undergraduate student at the University of Wisconsin-Madison who is not low-income or a first-generation college student. Compl. ¶¶ 10–13, ECF No. 1. Plaintiffs filed the Complaint on August 27, 2024, claiming that the racial classifications in the McNair Program pose an Equal Protection violation. And on September 4, 2024, they filed the instant motion seeking a preliminary injunction "prohibiting Defendants from enforcing or otherwise implementing the racial and ethnic classifications in 20 U.S.C. § 1070a-15(d) and 34 C.F.R. §§ 647.3 and 647.7." Pls.' Mot. for Prel. Inj. ("Pls.' Mot.") at 1, ECF No. 7.

## STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy, and the burden of establishing the propriety of an injunction is on the movant." *Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 699 (8th Cir. 2021) (citation omitted); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."). In determining whether to issue a preliminary injunction, courts consider "the movant's likelihood of success on the merits, the threat of irreparable harm to the movant, the balance of the equities between the parties, and whether an injunction is in the public interest." *Sessler v. City of Davenport*, 990 F.3d 1150, 1154 (8th Cir. 2021) (citation omitted). Where, as here, the federal government is the defendant, the last two factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). "The primary function of a preliminary injunction is to preserve the status quo until, upon final hearing, a court may grant full, effective relief." *Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 593 (8th Cir. 1984). Preliminary injunctions that upend the status quo are generally disfavored. *See id.*

## ARGUMENT

I.  **Plaintiffs Are Not Likely to Succeed on the Merits Because They Lack Standing.**[5]

In assessing Plaintiffs' request for preliminary relief, this Court must determine whether the Plaintiffs have established jurisdiction, including Article III standing. *Munaf v. Geren*, 553 U.S. 674, 691 (2008). In order to establish standing, "the plaintiff must have suffered an 'injury in fact,'" "there must be a causal connection between the injury and the conduct complained of," and "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted); *see also Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016) ("The heartland of constitutional standing is composed of the familiar amalgam of injury in fact, causation, and redressability."). "At the preliminary injunction stage, . . . the plaintiff must make a 'clear showing' that she is 'likely' to establish each element of standing." *Murthy v. Missouri*, 144 S. Ct. 1972, 1986 (2024) (quoting *Winter*, 555 U.S. at 22). Here, Plaintiffs have not established that they have standing, and they therefore cannot succeed on the merits.

A.  **Plaintiffs' Asserted Injuries Would Not Be Redressed by Their Requested Relief Because They Are Not Eligible for the McNair Program Even if the Challenged Eligibility Provisions Were Eliminated.**

"Article III requires a plaintiff to show that she has suffered an injury in fact that is 'fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Haaland v. Brackeen*, 599 U.S. 255, 291–92 (2023)

---

[5] While Defendant will respond to Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12 in due course, if the Court agrees that it lacks Article III jurisdiction over Plaintiffs' claims, it may *sua sponte* dismiss the lawsuit. *See Missouri v. Yellen*, 538 F. Supp. 3d 906, 914 (E.D. Mo. 2021) (finding, in response to a preliminary injunction motion, that the plaintiff lacked standing and *sua sponte* dismissing the case for lack of jurisdiction), *aff'd*, 39 F.4th 1063 (8th Cir. 2022).

(quoting *California v. Texas*, 593 U.S. 659, 669 (2021)). Because Plaintiffs fail to establish any injury that would be redressed by the relief sought in this case, they cannot "pass" this essential "test." *Id.* at 292.

Plaintiffs challenge only "the racial and ethnic classifications in 20 U.S.C. § 1070a-15(d) and 34 C.F.R. §§ 647.3 and 647.7." Pls.' Mot. at 1. They do not challenge the eligibility option for low-income, first-generation college students, *see* 34 C.F.R. § 647.3(c)(1), or the case-by-case determination of underrepresented groups under 34 C.F.R. § 647.3(c)(3). They expressly admit that the individual Plaintiffs are not low-income, first-generation college students. Compl. ¶¶ 12–13. And YAF does not claim to have any member who is a low-income, first-generation college student who is interested in the McNair Program. *See id.* ¶ 39 (stating only that the UND chapter "has one or more members who are ready and able to apply to the McNair Program, but who are ineligible because of their race"). Moreover, no Plaintiff has alleged that they or their members have attempted to apply through the case-by-case criterion of 34 C.F.R. § 647.3(c)(3). In fact, Plaintiffs say they are not aware of any instance in which an applicant has been designated under 34 C.F.R. § 647.3(c)(3).[6] Compl. ¶ 26 n.5. *But see* Moore Decl. ¶¶ 13–14 (discussing instances in which applicants have been approved under 34 C.F.R. § 647.3(c)(3)).

Even if the Court were to grant Plaintiffs all the relief they have requested in this case—that is, enjoining the challenged eligibility provisions—Plaintiffs and their members have still not shown that they would be eligible for the McNair Program. Specifically,

---

[6] Plaintiffs suggest that "[r]ural whites," such as Plaintiff Durfee, who "grew up in a rural community," should be treated as underrepresented. Pls.' Mem. of Law in Supp. of Mot. for Prel. Inj. ("Pls.' Mem.") at 17, ECF No. 7-1. However, they do not allege that Durfee has sought to apply to participate in the McNair Program at her school under 34 C.F.R. § 647.3(c)(3).

Plaintiffs ask the Court to enjoin the statutory provision that identifies underrepresented groups for eligibility, 20 U.S.C. § 1070a-15(d) ("including . . . Alaska Natives, . . . Native Hawaiians, . . . [and] Native American Pacific Islands"), and the definition of "[g]roups underrepresented in graduate education" in 34 C.F.R. § 647.7(b), as incorporated by 34 C.F.R. § 647.3(c)(2). Under such an injunction, the other eligibility options would remain in place, and applicants would only be eligible for the McNair Program if they satisfy 34 C.F.R. § 647.3(c)(1) (low-income, first-generation college students) or (c)(3) (applicants who submit case-specific data demonstrating they are part of any underrepresented group). As discussed above, Plaintiffs have not shown that they can satisfy either remaining option.

Thus, "[t]he problem for [Plaintiffs] is redressability" because they "cannot identify how the 'requested relief will redress [their] alleged injury.'" *Noem v. Haaland*, 41 F.4th 1013, 1017 (8th Cir. 2022) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)). A Court order striking the challenged eligibility provisions does nothing for Plaintiffs. They have not identified any basis on which they would be eligible for the McNair Program under any of the remaining criteria, and thus could not be considered for program participation in any event. Because redressability is a requirement for Plaintiffs to have standing, the Court lacks jurisdiction to hear the claims in the first place. *See Haaland*, 599 U.S. at 292. Any effort by the Court to resolve the merits of Plaintiffs' Equal Protection claim would be "an advisory opinion without the possibility of any judicial relief." *California*, 593 U.S. at 673 (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 129 (1983) (Marshall, J., dissenting)).

Nor can there be any doubt that the appropriate relief in this case must be so limited. Because an injunction against the challenged provisions is the only relief

Plaintiffs requested, it is the only relief that the Court can consider in assessing redressability. *See Haaland*, 599 U.S. at 291–92 ("Article III requires a plaintiff to show that she has suffered an injury in fact that . . . 'likely to be redressed by the *requested* relief.'" (emphasis added) (quoting *California*, 593 U.S. at 669). The remaining provisions of the program are fully operative without the challenged eligibility provisions. Indeed, schools already are permitted to operate their project in a way that does not consider eligibility under the challenged provisions at all, and indeed some schools already serve 100% low-income, first-generation students. *See* Moore Decl. ¶ 15.[7]

Plaintiffs' attempts to recast their injury in other terms do not save them. First, Plaintiffs say that they were "deni[ed] equal treatment during [the] application process." Pls.' Mem. of Law in Supp. of Mot. for Prel. Inj. ("Pls.' Mem.") at 18, ECF No. 7-1. Citing *Northeast Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S.

---

[7] The challenged eligibility provisions are severable from the remainder of the McNair Program. "The inquiry into whether a statute is severable is essentially an inquiry into legislative intent." *Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 191 (1999); *see also MC/DC/DE Broads. Ass'n v. FCC*, 236 F.3d 13, 22 (D.C. Cir. 2001) ("Whether the offending portion of a regulation is severable depends upon the intent of the agency *and* upon whether the remainder of the regulation could function sensibly without the stricken provision." (citing *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 294 (1988))). "Unless it is evident that the legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." *Minnesota*, 526 U.S. at 191 (quoting *Champlin Refining Co. v. Corp. Comm'n of Okla.*, 286 U.S. 210, 234 (1932)). The primary purpose of the McNair Program is to provide assistance to "disadvantaged college students," 20 U.S.C. § 1070a-15(a), with a primary focus on low-income, first-generation college students, *see id.* § 1070a-15(d)(1) (requiring that not less than two-thirds of participants in any program be low-income, first-generation college students). Based on this purpose, it is clear that Congress and the Department of Education would have intended to maintain the McNair Program with or without the challenged eligibility provisions if a court were to declare those provisions unconstitutional. And as noted above, the remaining provisions of the program are not dependent on the challenged provisions and are fully operative standing alone.

656, 666 (1993), and *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995), Plaintiffs argue that they do not need to show "that they would ultimately be accepted into their universities' respective projects" if the challenged eligibility provisions did not exist, only that they were denied the opportunity to compete on equal footing. Pls.' Mem. at 18. But Plaintiffs were not denied an opportunity to compete because of the challenged eligibility provisions; they are simply not eligible to apply at all because they have not shown that they could meet *any* of the criteria for the McNair Program. "[A] party challenging" an allegedly discriminatory program "need only demonstrate that [she] is able and ready to" apply for the program "and that a discriminatory policy prevents [her] from doing so on an equal basis." *Ne. Fla. Chapter of Associated Gen. Contractors of Am.*, 508 U.S. at 666. Plaintiffs have not shown that they are "able" to apply for the McNair Program even if the Court grants the requested relief, and thus could not compete regardless. Put differently, the "denial of equal treatment" injury, Pls.' Mem. at 18, is not redressable.

Second, Plaintiffs claim that the individual Plaintiffs, Durfee and Rothove, suffered a "stigmatizing injury" because staff at their schools informed them that they were not eligible for the program. *Id.* (citing *Heckler v. Matthews*, 465 U.S. 728, 739–40 (1984); *Moore v. U.S. Dep't of Agric. ex rel. Farmers Home Admin.*, 993 F.2d 1222, 1224 (5th Cir. 1993)). In some cases, courts look to the "non-economic injuries to those persons who are personally denied equal treatment" because the allegedly discriminatory program "perpetuat[es] 'archaic and stereotypic notions'" or "stigmatiz[es] members of the disfavored group as 'innately inferior' and therefore less worthy participants in the political community." *Heckler*, 465 U.S. at 739–40 (quoting *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 725 (1982)). But the challenged eligibility provisions here do no such thing. At most, they identify certain groups that are presumptively "underrepresented in

graduate education." 20 U.S.C. § 1070a-15(d)(2). Nothing about the challenged eligibility provisions rises to the level of a stigmatizing injury to the Plaintiffs sufficient to confer standing. A "stigmatizing injury . . . accords a basis for standing only to 'those persons who are personally denied equal treatment' by the challenged discriminatory conduct." *Allen v. Wright*, 468 U.S. 737, 755 (1984) (quoting *Heckler*, 465 U.S. at 739–40). An "abstract stigmatic injury" is not "cognizable." *Id.* Absent some particularized cognizable harm to Plaintiffs themselves, the alleged injury is not a matter of individual concern, but rather a generalized and public one. Such "abstract questions of wide public significance" are "most appropriately addressed in the representative branches." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 475 (1982) (citation omitted).

**B.    The Organizational Plaintiffs Lack Standing.**

An organization "can assert standing on its own behalf, as an organization, or on behalf of its members, as associational standing." *Elec. Priv. Info. Ctr. v. U.S. Dep't of Com.*, 928 F.3d 95, 100 (D.C. Cir. 2019). The organizational Plaintiffs—YAF and its UND chapter—lack standing because they satisfy neither requirement.

Plaintiffs do not assert that YAF or its UND chapter suffer an organizational injury, nor could they. The McNair Program offers educational opportunities to individuals, not organizations, so the eligibility criteria does not affect the organizational Plaintiffs directly. And "a setback to the organization's abstract social interests" is insufficient to confer standing. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *see also Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024).

The organizational Plaintiffs also lack associational standing. To establish associational standing on behalf of its members, an organization must show that "(a) its

members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.* ("*SFFA*"), 600 U.S. 181, 199 (2023) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). The organizational Plaintiffs here fail the first two of these requirements.

First, they have not shown that any member would have standing to sue. Indeed, the only members that these groups identify at all are Durfee and Rothove, the same individual Plaintiffs who lack standing for the reasons explained above. *See supra* Part I(A). An organizational plaintiff "lacks associational standing to sue on behalf of unnamed members" when it fails to identify any member who has standing. *Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 602 (8th Cir. 2022).

Second, Plaintiffs have not met their burden of showing that the interests they seek to protect in this lawsuit are "germane to the organization's purpose," *SFFA*, 600 U.S. at 199, because they have not provided any information or allegations about the purpose of their organizations. The Complaint says only that YAF "is a nationwide student organization with thousands of members on campuses across the country." Compl. ¶ 11. It says nothing about the purpose or mission of the organization, and Plaintiffs' Motion for Preliminary Injunction provides no additional facts in this regard. Plaintiffs have thus not met their burden of establishing standing.

## II.     Plaintiffs Do Not Face a Threat of Irreparable Harm.

Plaintiffs are not entitled to the "extraordinary remedy" of a preliminary injunction because they are not "likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20, 22; *see Planned Parenthood Minn., N.D., S.D. v.*

*Rounds*, 530 F.3d 724, 732–33 & n.5 (8th Cir. 2008) (en banc) (requiring irreparable harm showing for injunctive relief); *see also Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009) (recognizing that irreparable harm only "occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages"). For the same reasons that Plaintiffs lack standing, *see supra* Part I, they have clearly failed to establish any irreparable harm. Plaintiffs have not shown that they are eligible for the McNair Program even if this Court strikes the challenged provisions, so any alleged harm is "simply not imminent" enough to warrant a preliminary injunction. *Paraquad, Inc. v. St. Louis Hous. Auth.*, 259 F.3d 956, 959 (8th Cir. 2001). Even if Plaintiffs could demonstrate an injury sufficient to confer standing, that does not mean that they have satisfied the standard for a preliminary injunction. Plaintiffs' burden to show irreparable harm is higher than what is required to establish standing. *See, e.g.*, *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). In particular, the Court need not rush to issue a preliminary injunction prior to any particular application deadline, *see* Pls.' Mem. at 18, because the Plaintiffs will still not be eligible to apply by those dates.

Moreover, any theoretical imminent harm resulting from schools' impending application deadlines is caused by Plaintiffs' timing of their lawsuit and motion, not by any conduct of the government. "[A] party requesting a preliminary injunction must generally show reasonable diligence." *Benisek v. Lamone*, 585 U.S. 155, 159 (2018). Plaintiffs waited until mere weeks before certain schools' application deadlines to seek emergency relief. Plaintiffs' voluntary decision to delay seeking a preliminary injunction "belies any claim of irreparable injury pending trial." *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 603 (8th Cir. 1999); *see also St. Marie v. Ludeman*,

14

No. 09-CV-3141-JNE-AJB, 2010 WL 924420, at *4 (D. Minn. Mar. 11, 2010) (finding that plaintiff waited to file motion until three weeks after notice of forthcoming government action, which "undermines [plaintiff's] claims of imminent irreparable harm"); *United States v. Arkansas*, No. 4:09-CV-33-JLH, 2010 WL 1408818, at *4 (E.D. Ark. Apr. 7, 2010) ("[D]elay alone may justify denial of a preliminary injunction." (citation omitted)).

### III.     The Public Interest Weighs Against a Preliminary Injunction

A preliminary injunction is not in the public interest. "The presumption of constitutionality which attaches to every Act of Congress is not merely a factor to be considered in evaluating success on the merits, but an equity to be considered in favor of [the government] in balancing hardships." *Walters v. Nat'l Ass'n of Radiation Survivors*, 468 U.S. 1323, 1324 (1984) (Rehnquist, J., in chambers). "[A]ny time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). Similarly, "there is inherent harm to an agency in preventing it from enforcing regulations that Congress found it in the public interest to direct that agency to develop." *Cornish v. Dudas*, 540 F. Supp. 2d 61, 65 (D.D.C. 2008); *see Seaside Civic League, Inc. v. U.S. Dep't of Hous. & Urb. Dev.*, No. 141823RMW, 2014 WL 2192052, at *3 (N.D. Cal. May 23, 2014). Thus, an injunction would irreparably harm the United States and undermine the public interest. The McNair Program provides assistance to "disadvantaged college students." 20 U.S.C. § 1070a-15(a). An injunction—especially a nationwide injunction—upending parts of the McNair Program issued in the midst of the application season will likely cause implementation issues, particularly because different schools set different deadlines for students. And this will likely harm college students from underrepresented backgrounds that have historically lacked access to graduate

15

education, who are currently eligible to apply to the program, and whom the program was intended to help. Reflecting Congress's judgment that this historical lack of access to graduate education should not impair anyone's ability to benefit from such education, the McNair Program awards millions of dollars to expand equitable access to higher education and provides research opportunities, summer internships, and other scholarly activities to thousands of underrepresented students interested in pursuing doctoral programs. *See* Moore Decl. ¶ 5. A nationwide injunction would thus potentially deny access to those same opportunities for currently eligible students—a serious incursion on Congress's judgment about the need to dismantle barriers to graduate education. On the other hand, the Plaintiffs have not shown that they would be eligible for the McNair Program even if the Court were to grant the requested relief, *see supra* Parts I, II, and would thus not benefit from an injunction. Under these circumstances, the Court should maintain the status quo of a program that has existed for over thirty years unchallenged. *See Ferry-Morse Seed Co.*, 729 F.2d at 593 ("The primary function of a preliminary injunction is to preserve the status quo . . . .").

## IV.  Because Plaintiffs Have Not Established Standing or Any Imminent Irreparable Harm, the Court Should Not Reach the Question of Whether the Challenged Provisions Are Constitutional

As discussed above, Plaintiffs have not established that the challenged provisions have any effect on their eligibility to apply for the McNair Program. Under these circumstances, the preliminary injunction factors are plainly not met, and the Court should not prematurely opine on the merits of Plaintiffs' constitutional claims. Courts "ought not to pass on questions of constitutionality unless such adjudication is unavoidable." *Matal v. Tam*, 582 U.S. 218, 231 (2017) (cleaned up). Consistent with the bedrock principle of separation of powers, adjudicating the constitutionality of executive

or congressional action "has been recognized as a tool of last resort on the part of the federal judiciary throughout its nearly 200 years of existence." *Valley Forge Christian Coll.*, 454 U.S. at 474.

These concerns are further pronounced here, because the case is in a preliminary posture and lacks the benefit of a full record. "A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng*, 485 U.S. at 445. Plaintiffs likely have not stated any injury redressable by the requested relief, *see supra* Part I, and even if they have stated some cognizable injury, such injury is likely not irreparable at this time, *see supra* Part II. Accordingly, the Court should decline to address the merits of Plaintiffs' constitutional claims at this time as a matter of constitutional avoidance.

## V.     Any Relief Should Be Limited to the Plaintiffs.

In the event that the Court finds that the Plaintiffs are entitled to relief, such relief should be limited to the Plaintiffs. "The Court's constitutionally prescribed role is to vindicate the individual rights of the people appearing before it." *See Gill v. Whitford*, 585 U.S. 48, 72 (2018). "A plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Id.* at 73. And principles of equity independently require that injunctions be no broader than "necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted).

"[N]ationwide injunctions or universal remedies . . . seem to take the judicial power beyond its traditionally understood uses, permitting district courts to order the government to act or refrain from acting toward nonparties in the case." *Arizona v. Biden*, 40 F.4th 375, 396 (6th Cir. 2022) (Sutton, C.J., concurring); *see also Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring) (questioning propriety of

17

nationwide injunctions); *Trump v. Hawaii*, 585 U.S. 667, 720 (2018) (Thomas, J., concurring) (suggesting universal injunctions are inconsistent with "limits on equity and judicial power"); *Louisiana v. Becerra*, 20 F.4th 260, 264 (5th Cir. 2021) (staying nationwide injunction of COVID-19 vaccination mandates as "an issue of great significance" that "will benefit from the airing of competing views in our sister circuits" (citation omitted)). As Justice Gorsuch, joined by Justice Thomas, has explained, "[b]ecause plaintiffs generally are not bound by adverse decisions in cases to which they were not a party, there is a nearly boundless opportunity to shop for a friendly forum to secure a win nationwide." *Dept' of Homeland Sec.*, 140 S. Ct. at 601 (Gorsuch, J., concurring). This creates risks of "conflicting nationwide injunctions," with "asymmetric" stakes where "a single successful challenge is enough to stay the challenged rule across the country." *Id.*; *see also Trump*, 585 U.S. at 713 (Thomas, J. concurring) (observing that universal relief "take[s] a toll on the federal court system — preventing legal questions from percolating through the federal courts, encouraging forum shopping, and making every case a national emergency for the courts and for the Executive Branch.").

Plaintiffs do not advance any compelling argument why the Court should ignore these principles in this case. First, they note that the McNair Program is operated by many colleges across the country, *see* Pls.' Mem. at 19, but they do not explain or provide citation as to why the existence of a nationwide program suggests that a universal remedy is favored. Next, they say that YAF is a nationwide organization and that tailored relief would raise "workability concerns." *Id.* But YAF has only identified two schools, UND and University of Wisconsin, in which any member is even interested in the McNair

Program.[8]

Finally, Plaintiffs say that universal relief is appropriate because "this action is brought partly under 5 U.S.C. § 706(2)(B), which states that a district court 'shall hold unlawful and set aside agency action . . . found to be contrary to constitutional right, power, privilege, or immunity.'" *Id.* As an initial matter, Plaintiffs' motion seeks a nationwide preliminary injunction, not vacatur at final judgment under § 706(2)(B). In any event, Plaintiffs' citations to the Administrative Procedure Act ("APA") in the Complaint do not compel a nationwide remedy. *See, e.g., California v. Azar*, 911 F.3d 558, 582–84 (9th Cir. 2018) (vacating nationwide scope of injunction in facial challenge under the APA). No federal court had issued a nationwide injunction before Congress's enactment of the APA in 1946, nor would any court do so for more than fifteen years thereafter. *See Trump*, 585 U.S. at 716 (Thomas, J., concurring). A court "do[es] not lightly assume that Congress has intended to depart from established principles" regarding equitable discretion. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982). The APA's general instruction that unlawful agency action "shall" be "set aside," 5 U.S.C. § 706(2), does not mandate such a departure. The Supreme Court therefore has confirmed that, even in an APA case, "equitable defenses may be interposed," *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 155 (1967), such as a court's inherent power to define the scope of relief granted. And at least three Supreme Court Justices have indicated that the APA does not require, or perhaps even permit, universal vacatur of agency actions. *See United States v. Texas*, 599 U.S. 670, 695 (2023) (Gorsuch, J., concurring in the judgment) (joined by Justices Thomas and Barrett).

---

[8] In the event that the Court finds that YAF is entitled to a preliminary injunction, such injunction should extend at most to the projects at these two schools. Any broader injunction would not be tailored to redress the Plaintiffs' particular injuries. *See Gill*, 585 U.S. at 72.

## CONCLUSION

The Court should deny Plaintiffs' motion. In the event the Court finds a preliminary injunction is warranted, such relief should be limited to the Plaintiffs and should enjoin only the provisions that the Court concludes are likely unlawful.


Dated:  September 23, 2024          Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

EMILY B. NESTLER
Assistant Branch Director

*/s/ Michael P. Clendenen*
MICHAEL P. CLENDENEN
(D.C. Bar # 1660091)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 305-0693
Fax: (202) 616-8460
michael.p.clendenen@usdoj.gov

*Attorneys for Defendants*