UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

---

YOUNG AMERICANS FOR FREEDOM, et al.,

    Plaintiffs,

v.                                                                          Case No. 3:24-cv-00163-ARS

U.S. DEPARTMENT OF EDUCATION, et al.

    Defendants.

---

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

---

**ARGUMENT IN REPLY**

The McNair Program employs a racial eligibility criterion. A student cannot participate unless he or she is "[a] member of a group that is underrepresented in graduate education" or "[a] low-income individual who is a first-generation college student." 34 C.F.R. § 647.3. Only some races are defined by regulation as "underrepresented" (e.g., black). 34 C.F.R. § 647.7(b). According to Defendants, universities, not students, can ask Defendants to adjudicate on a "case-by-case" basis whether other races are "underrepresented." ECF 9-1, ¶13

The racial eligibility criterion is unconstitutional, and Defendants do not argue otherwise. Instead, Defendants assert that Plaintiffs lack standing, yet Defendants do not dispute that if two Plaintiffs—Durfee and Rothove—were black instead of white, they could participate. They are excluded because of their race, as are countless members of the associational Plaintiffs. This differing treatment is an injury and grounds for standing, as is the stigma conferred by the criterion.

The racial eligibility criterion should be preliminarily enjoined.

**I.    Plaintiffs are likely to succeed on the merits because the racial eligibility criterion is unconstitutional, and they have standing to challenge it.**

Plaintiffs are likely to succeed on the merits. The racial eligibility criterion is unconstitutional. It fails strict scrutiny, does not comply with the twin commands, and lacks a logical end point. ECF 7-1:12–18. Defendants do not argue otherwise even though: (1) "the most significant" preliminary injunction factor is the likelihood of success on the merits, *Sleep Number Corp. v. Young*, 33 F.4th 1012, 1016 (8th Cir. 2022), and (2) Defendants have the burden of proof (and a "daunting" one at that), *see SFFA v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 206 (2023).

Plaintiffs have standing to challenge the racial eligibility criterion. In an equal protection action like this one, cause and redressability are shown in the same way that injury is—the three standing elements are compressed into one. *Ne. Fla. Ch. of Associated Gen. Contractors of Am. v. City of Jacksonville,* 508 U.S. 656, 666 n.5 (1993) ("It follows from our definition of 'injury in fact' that petitioner has sufficiently alleged both that the city's ordinance is the 'cause' of its injury and that a judicial decree directing the city to discontinue its program would 'redress' the injury."). The injury is the "denial of equal treatment" and not the "ultimate inability to obtain the benefit." *Id.* at 666. Accordingly, "[w]hen the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not [even] allege that he [or she] would have obtained the benefit but for the barrier in order to establish standing." *Id.* Additionally, the criterion creates a stigmatizing injury by perpetuating "archaic and stereotypic notions," labeling members of disfavored groups as "innately inferior" or otherwise "less-worthy participants in the political community." *Heckler v. Mathews,* 465 U.S. 728, 739–40 (1984) (citation omitted); *see also Moore v. USDA ex rel. Farmers Home Admin.*, 993 F.2d 1222, 1224 (5th Cir. 1993) ("The badge of inequality and stigmatization conferred by racial discrimination is a cognizable harm in and of itself providing grounds for standing.") (citation omitted).

Like thousands of students across the nation, Plaintiffs Durfee and Rothove are treated differently than students of other races whom Defendants prefer. Both are white. ECF 1, ¶¶12–13. If they were one of Defendants' preferred races, they could participate, but they are not, so they cannot. Plaintiffs are denied equal treatment and stigmatized because of their race.

If this Court were to enjoin the racial eligibility criterion, such that the program was only open to low-income students, Plaintiffs injuries would abate. That Plaintiffs would not meet the

low-income criterion is irrelevant—the unequal treatment based on race would cease. As the Sixth Circuit noted, "[t]he government's use of racial preferences causes that injury. And that injury is redressable by a decision ordering the government not to grant priority consideration based on the race of applicants." *Vitolo v. Guzman*, 999 F.3d 353, 359 (6th Cir. 2021) (citations omitted).

Accordingly, such an order would redress Plaintiffs' injuries. The consideration of race (used as a "stereotype" and "negative" against Plaintiffs) is an injury, *see SFFA,* 600 U.S. at 218–19, and enjoining the racial eligibility criterion would remove it.[1] *See, e.g.*, *Nuziard v. MBDA*, 676 F. Supp. 3d 473, 481 (N.D. Tex. 2023) ("Defendants contend that enjoining the [p]rogram's race-and-ethnicity requirement would not entitle Nuziard to the Center's services and thus would not redress his injury. But Defendants misunderstand Nuziard's injury. His injury is 'the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.' ") (quoted source omitted); *Ultima Servs. Corp. v. USDA*, 683 F. Supp. 3d 745, 761 (E.D. Tenn. 2023) ("A judgment prohibiting Defendants from using the rebuttable presumption based on race would remove the race-based barrier that injures Ultima. '[I]t does not matter' that Ultima might not otherwise qualify for the 8(a) program with the rebuttable presumption removed because 'the playing field in qualifying for the [8(a) program] would be 'leveled.' ") (quoted source omitted).

Contrarily, Defendants suggest that this action should fail because "[n]one of the Plaintiffs or their members . . . are eligible as low-income, first-generation college students . . . ." ECF 9:9–

---

[1] As the Eighth Circuit has explained, "where one plaintiff establishes standing to sue, the standing of other plaintiffs is immaterial." *Nat'l Wildlife Fed'n v. Agric. Stabilization & Conservation Serv.*, 955 F.2d 1199, 1203 (8th Cir. 1992) (quoted source omitted). Defendants argue that the associational Plaintiffs lack standing, but this Court need not, and should not, reach this issue. If this Court disagrees, though, Plaintiffs Durfee and Rothove are members of the associational Plaintiffs, so the associational Plaintiffs have standing. Moreover, Plaintiff YAF's mission to protect individual freedoms is widely known. *See* Ex. A, ¶2 ("This mission includes defending the rights of students to be treated equally under the law.").

3

10. Defendants essentially focus on redressability: If Plaintiffs received "all the relief they have requested in this case—that is, enjoining the challenged eligibility provisions—Plaintiffs and their members have still not shown that they would be eligible for the McNair Program." ECF 9:16.

This argument is wrong because whether Plaintiffs could ultimately get the benefit is immaterial. Again, an inability to obtain the benefit—participation in the program—is not one of the injuries. This action is about the unequal treatment and stigmatization created by the racial eligibility criterion—"not the ultimate inability to obtain the benefit." *Ne. Fla.*, 508 U.S. at 666.

Defendants' argument also inverts the proper standing analysis. If Plaintiffs were "low-income, first-generation college students," they could participate. They would, accordingly, lack standing.[2, 3]

Finally, Defendants say, "no Plaintiff has alleged that they or their members have attempted to apply though the case-by-case [adjudication] . . . ." ECF 9:16.

Defendants all but concede standing with this theory. Effectively, Defendants argue that Plaintiffs—*because of their race*—must jump through additional hoops just to have a shot at participating. That differing treatment is an injury. Causing whites students, but not black students (or students of other preferred races), to jump through hoops because of their race is unconstitutional. *See, e.g.*, *Vitolo*, 999 F.3d at 358–59 (explaining a presumption of disadvantage, even if it can be overcome, creates an injury).

---

[2] Under Defendants' argument, no one could challenge the racial eligibility criterion. If a student were black, he or she would be eligible and, therefore, without an injury. If a white student were low-income, he or she would be eligible and, therefore, without an injury. Eligible students are not injured. Defendants' claim, therefore, is that no person could ever challenge the criterion because the criterion injures no one. Plaintiffs disagree. It injures Plaintiffs by using their race against them.

[3] Defendants also vaguely claim that Plaintiffs cannot meet "*any* of the Criteria for the McNair Program." ECF 9:19. As the Verified Complaint shows, Plaintiffs Durfee and Rothove meet the non-racial eligibility criteria. ECF 1, ¶¶12–13, 25, 36–37, 40–43, 48–60. Plaintiffs fail only to meet the offending criterion, which requires an applicant to either be low-income or a particular racial minority.

Additionally, according to Defendants' own declaration, universities—not students—can use the case-by-case adjudication. ECF 9-1, ¶13. They explain that a university "typically" must provide "the names of the proposed students to be served, type of underrepresentation, gender, race/ethnicity, and filed of study of the proposed student(s), along with standard statistical references or other national survey data to support the student('s)' categorization as a member of a group that is underrepresented within their identified academic discipline." ECF 9-1, ¶13. They ignore that both Plaintiffs Durfee and Rothove asked their university if they could participate, and both were told no. ECF 1, ¶¶12, 40–42, 58–59. Neither can unilaterally seek a case-by-case adjudication.

In summary, this Court should conclude that the likelihood of success weighs heavily in favor of a preliminary injunction. *See Vitolo*, 999 F.3d at 360 (explaining this factor is "typically dispositive" in "constitutional cases") (citation omitted).

## II. The other factors weigh in favor of a preliminary injunction.

All other factors weigh in favor of a preliminary injunction. First, the denial of equal protection is irreparable. *Portz v. St. Cloud State Univ.*, 196 F. Supp. 3d 963, 973 (D. Minn. 2016) ("[W]hen the constitutional right at issue is protected by the Fourteenth Amendment, the denial of that right is an irreparable harm . . . .").

Defendants respond that Plaintiffs will suffer no irreparable harm because they are ineligible for the program, parroting their incorrect standing theory. As explained above, Plaintiffs are injured because they are treated unequally and subjected to a government-imposed stigma because of their race.

Defendants next argue that the program's age somehow changes the irreparable harm analysis, characterizing the program as "decades old." ECF 9:10 ("[T]heir delay in filing an

5

emergency motion challenging a decades-old program shows a lack of irreparable harm."). Obviously, Plaintiffs Durfee and Rothove have not been undergraduate students for decades. Even assuming otherwise, a denial of equal protection only gets more severe as the length of an affirmative action program increases.[4] *SFFA*, 600 U.S. at 213 (noting affirmative action policies must have a scheduled end date and that two colleges had used them for decades with "no end . . . in sight"); *see also MAMCO v. U.S. Dep't of Trans.*, 2024 WL 4267183, at *10 (E.D. Ky. Sept. 23, 2024) ("Because the DBE program's racial preferences are not tethered to a foreseeable conclusion, the race-based presumption fails to be narrowly tailored.").

Defendants next ask this Court to consider the purported harm to the United States, saying that a preliminary injunction would be challenging to implement. ECF 9:23. Equal protection doctrine is not concerned with harm to the government or bureaucratic difficulties in complying with the Constitution: "[I]t is always in the public interest to prevent the violation of a party's constitutional rights."[5] *D.M. ex rel. Bao Xiong v. Minn. State High Sch. League*, 917 F.3d 994, 1004 (8th Cir. 2019) (quoted source omitted).

Lastly, Defendants also ask this Court to consider the harm to "college students from underrepresented backgrounds." ECF 9:23. Being considered equally and without favoritism

---

[4] Additionally, had Plaintiffs filed too much sooner, Defendants may have argued that this action was unripe. In late June 2023, the United States Supreme Court held affirmative action in college admissions unconstitutional. *See SFFA*, 600 U.S. 181. Since then, many affirmative action programs have changed without any need for litigation. Unfortunately, the program challenged in this action was not among them. This Court has plenty of time to prevent racial discrimination—especially considering that Defendants do not even argue that the racial eligibility criterion is constitutional. Many universities will not select applicants until approximately early November. *See, e.g.*, https://mcnair.wisc.edu/apply-to-mcnair/.

[5] In articulating this principle, the Eighth Circuit held that a district court erred in denying a preliminary injunction to allow boys to participate on a competitive dance team. *D.M.*, 917 F.3d at 1003–04. Even though a Minnesota statute allowed "girls-only teams" (one might call that the status quo), the court "overlook[ed] the fair probability" that a girls-only team denied the boys equal protection. *Id.*

because of race is hardly a "harm" that should be considered. As the Sixth Circuit has explained, the beneficiaries of unconstitutional conduct lack a "cognizable" interest in its continuance, so "stopping unconstitutional conduct" does not harm them in any relevant sense. *Vitolo*, 999 F.3d at 360.

### III.     A universal injunction is appropriate.

Plaintiffs explained in detail why universal relief is appropriate in their opening brief. Plaintiffs additionally submit that a universal injunction would afford complete relief if this Court merely prevented Defendants from enforcing the racial eligibility criterion, thereby converting the program into one for low-income students. As stated above, removing the criterion and leaving the income-based requirement cures Plaintiffs' injuries completely without the need for a complicated injunction. If this Court were not inclined to provide such relief, Plaintiffs can provide this Court with a list of schools that participate in the program and that also have students who are members of Plaintiff YAF.[6]

### CONCLUSION

This Court should grant the motion for a preliminary injunction preventing Defendants from imposing the racial eligibility criterion.

---

[6] Given page limit constraints, Plaintiffs do not address the issue further other than to note that Defendants' response is playing semantics. *See* ECF 9:27 ("Plaintiffs' motion seeks a nationwide preliminary injunction, not vacatur at final judgment . . . ."). If this Court would like further briefing on the scope of the remedy, Plaintiffs are more than happy to provide it on an expedited timeline.

Dated: September 30, 2024

                    WISCONSIN INSTITUTE FOR LAW & LIBERTY, INC.

                    */s/ Skylar Croy*
                    Richard M. Esenberg
                    Daniel P. Lennington
                    Skylar Croy
                    330 East Kilbourn Avenue, Suite 725
                    Milwaukee, WI 53202
                    Telephone: (414) 727-9455
                    Fax: (414) 727-6385
                    Rick@will-law.org
                    Dan@will-law.org
                    Skylar@will-law.org

                    *Attorneys for Plaintiffs*