UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
_____

YOUNG AMERICAN'S FOR FREEDOM, et al.,

    Plaintiffs,

v.                                                                Case No. 3:24-cv-00163-ARS

U.S. DEPARTMENT OF EDUCATION, et al.,

    Defendants.
_____

**PLAINTIFFS' MOTION TO ALTER OR AMEND A JUDGMENT**
_____

**INTRODUCTION**

1.  Under Rule 59(e), Plaintiffs respectfully ask this Court to reconsider its December 31, 2024, order denying their motion for a preliminary injunction and dismissing their action for lack of standing. *See* ECF 19. As explained below, had the Court considered Exhibit A, which shows that McNair projects are funded yearly, it would have concluded that an injunction would redress Plaintiffs' injuries. Additionally, this Court should not have dismissed their action but allowed Plaintiffs to amend their complaint.[1]

**BACKGROUND**

2.  This Court is aware of the facts. To briefly overview them, Plaintiffs sued over the Ronald E. McNair Postbaccalaureate Achievement Program. Through this program, the Department of Education provides grants to institutions of higher education. Under various statutes and regulations, the institutions then consider race in awarding scholarships. This Court concluded, "it seems likely the racial eligibility criteria fail[] to satisfy strict scrutiny." ECF 19:5 n.1. The program is probably unconstitutional by this Court's reasoning.

3.  Plaintiffs moved for a preliminary injunction. Defendants did not move to dismiss but addressed standing in the context of the likelihood of success prong for a preliminary injunction. They argued that Plaintiffs could not satisfy race-neutral criteria. ECF 19:6.

---

[1] For simplicity, no separate memorandum of law is filed with this motion.

4.      In this Court's order, it rejected Defendants' standing argument but proceeded to address a concern it had. ECF 19:6–7. As it believed, the Department awards grants every five years, but "[t]here is nothing in the record that indicates that the Department has any control over grants once allocated to the institutions."[2] ECF 19:7. Because grants were awarded in 2022, this Court reasoned nothing could be done to redress Plaintiffs' injuries until around 2027. ECF 19:8–9 ("[T]hose institutions already received funding from the Department … through 2027. So, through 2027, [the institutions] exclusively control … admission decisions and its funding allocation to admit participants, not the Department.").

5.      Defendants did not assert that the Department had no control over grants except when making initial awards. In response to this Court's concern, at the hearing on the motion for a preliminary injunction, counsel for Plaintiffs offered to address this specific redressability issue in additional briefing as it required some factual investigation. ECF 15:25. No such briefing was ordered.

6.      As Exhibit A demonstrates, the Department indeed has control even after making initial awards. This document is a grant award notification. As it shows, the "performance period" was, in fact, five years; however, the "budget period" was just one of those years. Over five years, the University of North Dakota received about $1.4 million, but it only got $289,267 each year. The document also specifies various "terms and conditions" that must be satisfied for continued funding.

---

[2] The statute itself states that the Secretary of Education shall require various "assurances" from each institution. 20 U.S.C. § 1070a-15(d). The Verified Complaint also references emails from institution employees who informed Plaintiffs that they were bound by these assurances. ECF 1, ¶¶12–13, 40–42, 58–59.

2

7. Simply stated, while grants are awarded once every five years, funds are dispersed by the Department annually. An institution does not get all five years of money in one lump sum. Therefore, each year, an institution accepts the annual portion of its five-year award, and Defendants, of course, have an additional opportunity to reassess an institution's compliance. Indeed, Exhibit A is quite detailed.

## ARGUMENT

8. This Court dismissed for lack of standing, so Plaintiffs rely on precedent regarding Rule 12(b)(1). As the Eighth Circuit has explained, "[w]hen considering a motion under Rule 12(b)(1), a court is to consider whether a party is asserting a 'facial attack' or a 'factual attack' on jurisdiction." *Smith v. UnitedHealth Grp., Inc.*, 106 F.4th 809, 813 (8th Cir. 2024) (quoted source omitted). A facial attack is limited to the four corners of the complaint and follows the same well-known standards that govern failure to state a claim motions under Rule 12(b)(6). All allegations are accepted as true and "all reasonable inferences" are made in favor of the non-moving party. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016). A "factual attack" raises a factual dispute beyond the complaint itself. Had Defendants launched such an attack, an "evidentiary hearing" would likely have been held. *See Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990). The parties would have submitted "affidavits or other documents." *Id.* "If necessary," this Court could have heard from witnesses. *Id.*

9. If this Court believed that the complaint was facially defective, Plaintiffs respectfully submit that the reasoning in the order does not comport with the relevant legal standard. Plaintiffs did not get the benefit of "all reasonable inferences," among other problems. The Verified Complaint cannot be read (in light of the legal standard) as stating that institutions receive a single lump-sum payment for a full five-year period. It also cannot be read as alleging a general lack of control by Defendants after grants have been awarded.

10. Plaintiffs believe this Court is more likely to have understood itself as identifying a factual problem, beyond the complaint, with standing. Specifically, it discussed in its order that "[t]here is nothing in the record that indicates that the Department has any control over grants once allocated to the institutions." ECF 19:7.

11. Plaintiffs do not believe that this Court gave them a sufficient opportunity to address its concern, which was different from the arguments raised by Defendants. Had briefing been ordered on this issue, Plaintiffs would have submitted Exhibit A. Notably, Defendants did not move to dismiss—the primary reason there was not more of a record was the procedural posture.

12. More generally, Plaintiffs could have researched and addressed the full extent of Defendants' post-award control. This Court relied heavily on *Haaland v. Brackeen*, 599 U.S. 255 (2023). In that action, though, petitioners actually conceded that "[t]here is no federal official who administers [the relevant statute] or *carries out* its mandates." *Id.* at 293 (quoting Brief for Individual Pet'rs at 63) (emphasis added). The same cannot be said here. The statute provides: "The Secretary [of Education] shall *carry out* a program to be known as the … [McNair Program] …." 20 U.S.C. § 1070a-15(a) (emphasis added). Plaintiffs have never conceded (in their complaint or otherwise) that no federal official administers the program.[3]

## CONCLUSION

13. Plaintiffs ask this Court to reconsider its order. Given that this Court already indicated that the program is unconstitutional, Plaintiffs respectfully request that it preliminarily enjoin Defendants.

14. Alternatively, this Court should at least reverse its dismissal. If a factual dispute exists, Defendants can move to dismiss and the arguments can be dealt with at that time. Plaintiffs respectfully submit that the complaint is not facially defective.

---

[3] As noted in the Verified Complaint: "The Biden-Harris Administration runs a $60 million, nationwide scholarship and career-development program …." ECF 1, ¶1.

15. Lastly, at a minimum, Plaintiffs believe that they should be allowed to amend their complaint rather than being required to file a new one. *See generally Bucklew v. Lombardi*, 783 F.3d 1120, 1127 (8th Cir. 2015) (emphasis added) ("Without question, a district court has the power to dismiss a complaint *sua sponte*, *but only where plaintiff cannot possibly prevail and amendment would be futile*."); *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) ("[A] district court may not sua sponte dismiss a complaint where the filing fee has been paid unless the court gives the plaintiff the opportunity to amend the complaint.").[4] Plaintiffs would add a paragraph or two clarifying that, while grants are awarded every five years, institutions do not receive a lump sum payment. They would also discuss further the extent of the Department's control.

---

[4] While this Court did reference this issue at the preliminary injunction hearing, counsel for Plaintiffs respectfully submits that it would have been bold, if not inappropriate, to take it upon himself to submit additional briefing without order from this Court, especially given that he offered to submit further briefing and this Court did not indicate an interest in receiving it.

Dated: January 24, 2025

    Respectfully submitted,

    WISCONSIN INSTITUTE FOR LAW & LIBERTY, INC.

    */s/ Skylar Croy*
    Richard M. Esenberg
    Daniel P. Lennington
    Skylar Croy
    330 East Kilbourn Avenue, Suite 725
    Milwaukee, WI 53202
    Telephone: (414) 727-9455
    Fax: (414) 727-6385
    Rick@will-law.org
    Dan@will-law.org
    Skylar@will-law.org

    *Attorneys for Plaintiffs*